1  DAVID L. JORDAN (SBN 203457)
   dljordan@grsm.com
2  EDWARD ROMERO (SBN 148495)
   eromero@grsm.com
3  GORDON REES SCULLY MANSUKHANI, LLP
   275 Battery Street, Suite 2000
4  San Francisco, CA 94111
   Telephone:  (415) 875-3323
5  Facsimile:   (415) 986-8054

6  Attorneys for PLAINTIFF AND COUNTER-DEFENDANT
   GOOD TIMES RESTAURANTS, LLC AND
7  THIRD PARTY DEFENDANTS VIKRAM BHAMBRI,
   ANUPAMA BHAMBRI, TARESH ANAND,
8  JATINDER PAL SINGH KOHLI, AND SACHIN DHAWANWILL

9

10

11              UNITED STATES DISTRICT COURT

12         FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14  GOOD TIMES RESTAURANTS, LLC, a    )  Case No.  3:21-cv-07688 AGT
    California limited liability company,  )
15                                    )  **MEMORANDUM OF POINTS AND**
                  Plaintiff,          )  **AUTHORITIES OF COUNTER-**
16                                    )  **DEFENDANT GOOD TIMES, LLC AND**
           v.                         )  **THIRD PARTY DEFENDANTS IN**
17                                    )  **SUPPORT OF MOTION TO DISMISS**
    SHINDIG HOSPITALITY GROUP LLC,    )  **THE AMENDED COUNTERCLAIM AND**
18  an Illinois limited liability company; and  )  **THIRD PARTY COMPLAINT OF**
    DOES 1-10,                        )  **SHINDIG HOSPITALITY GROUP, LLC**
19                                    )
                  Defendant.          )
20  _____  )  Date:   Friday, June 24, 2022
                                      )  Time:  10:00 a.m.
21  SHINDIG HOSPITALITY GROUP LLC,    )  Courtroom: A – 15th Floor
    an Illinois limited liability company  )  [The Honorable Alex G. Tse]
22                                    )
               Counter-Plaintiff,     )
23                                    )
           v.                         )
24                                    )
    GOOD TIMES RESTAURANTS, LLC, a    )
25  California limited liability company,  )
                                      )
26             Counter-Defendant,     )
    _____  )
27                                    )
                                      )
28

SHINDIG HOSPITALITY GROUP, LLC, )
an ILLINOIS limited liability company, )
)
               Third-Party Plaintiff, )
)
     v. )
)
VIKRAM BHAMBRI; ANUPAMA )
BHAMBRI; TARESH ANAND; )
JATINDER PAL SINGH KOHLI; SACHIN )
DHAWAN; and ROES 1 - 20, )
)
          Third Party Defendants. )
)

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1

**TABLE OF CONTENTS**

2

**Page**

3    I.    INTRODUCTION .................................................................................1

4    II.   THE ALLEGATIONS AND CLAIMS FOR RELIEF ASSERTED AGAINST GOOD
          TIMES AND BHAMBRI .......................................................................4

5         A.    The Agreement..................................................................................4

6
          B.    The Shindig Operating Agreement. ...................................................6
7
          C.    The Restaurant. ................................................................................7
8

9    III.  POINTS AND AUTHORITIES .............................................................8

10        1.    The Standard Governing this Motion. ................................................8

11        2.    Shindig's Second, Fifth and Sixth Claims for Relief Fail to State Facts    Upon
                Which Relief Can be Granted. ...........................................................9

12              A.    The Agreement is Not a Franchise Agreement............................9

13              B.    Shindig Has Failed to State a Claim for Wrongful Termination of the
                      Agreement...........................................................................11

14
                C.    The Agreement is not Subject to the Illinois Franchise Disclosure Act. ....12
15
          3.    The Amended Pleading Fails to State a Claim for Violation of the Unfair
16              Competition Law. ...........................................................................12

17              A.    The Management Fee Specified in the Agreement is Not a Required
                      Payment..............................................................................14
18
                B.    The License Fee is Not a Required Payment. ...........................15
19
                C.    The Agreement Neither Confers Good Times with Authority to Control
20                    the Operation of the Restaurant Nor does it Require Good Times to
                      Provide Significant Assistance in the Operation of the Restaurant ..........15
21
                D.    Shindig's Allegations of Control by Good Times are a Sham.................16
22
                E.    Shindig Identifies No Terms of the Agreement that are Unconscionable. 17
23
          4.    The Seventh Claim for Relief Fraudulent Misrepresentation Fails to State    a
24              Claim Upon Which Relief Can be Granted. ......................................17

25        5.    The Tenth Cause of Action Fails to State a Claim for Breach of Fiduciary Duty. 18

26   IV.   CONCLUSION....................................................................................20

27

28

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

-iii-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Apartment Assn., Inc. v. City of Santa Monica*,
    41 Cal. 4th 1232 (2007) ................................................................................ 19

*Arpin v. Santa Clara Valley Transportation Agency*,
    261 F. 3d 912 (9th Cir. 2001) ........................................................................ 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................ 9, 17, 20

*Bell Atlantic Corporation v. Twombly*,
    550 U.S. 544 (2007) ..................................................................... 8, 9, 17, 20

*Butler v. Los Angeles County*,
    617 F. Supp. 2d 994 (CD Cal. 2008) ............................................................ 9

*Caltex Plastics, Inc. v. Lockheed Martin Corporation*,
    824 F.3d 1156 (9th Cir. 2016) ...................................................................... 8

*Doe v. United States*,
    419 F.3d 1058 (9th Cir. 2005) ...................................................................... 9

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
    896 F.2d 1542 (9th Cir. 1990) ...................................................................... 9

*Hoffman v. 162 Wolfe LLC*,
    228 Cal. App. 4th 1178 (2014) .................................................................... 18

*In re NVIDIA Corporation Securities Litigation*,
    768 F.3d 1046 (9th Cir. 2014) ...................................................................... 9

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ...................................................................... 9

*Paulsen v. CNF, Inc.*,
    391 F. Supp. 2d 804 (ND Cal. 2005) ........................................................... 9

*Petrie v. Electronic Game Card, Inc.*,
    761 F.3d 959 (9th Cir. 2014) ........................................................................ 9

*Rosenthal v. Irell & Manella*,
    135 Cal. App. 3d 121 (1982) ........................................................................ 19

*Seismic Reservoir 2020, Inc. v. Paulsson*,
    785 F.3d 330 (9th Cir. 2015) ........................................................................ 8

*Strom v. United States*,
    641 F.3d 1051 (9th Cir. 2011) ...................................................................... 8

-iv-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

*Thueson v. U-Haul International, Inc.*,
    144 Cal. App. 4th 664 (2006) .......................................... 10, 11

**Statutes**

815 Illinois Compiled Statutes
    Section 705 ....................................................................... 12

California Business and Professions Code
    Section 17200 ................................................................. 3, 12

California Business and Professions Code
    Section 20000 ..................................................................... 11

California Business and Professions Code
    Section 20001 ..................................................................... 11

California Business and Professions Code
    Section 20020 ................................................................. 11, 12

California Civil Code
    Section 47 .......................................................................... 19

California Corporations Code
    Section 31000 ...................................................................... 9

California Corporations Code
    Section 31302 ..................................................................... 10

**Rules**

Federal Rules of Civil Procedure
    Rule 11 ............................................................................... 4

Federal Rules of Civil Procedure
    Rule 12 ..................................................................... 8, 9, 17, 20

Federal Rules of Civil Procedure
    Rule 15 ......................................................................... 2, 20

Federal Rules of Civil Procedure
    Rule 21 ......................................................................... 2, 20

**Regulations**

16 Code of Federal Regulations
    Section 436 ....................................................................... 13

16 Code of Federal Regulations
    Section 436.1 ..................................................... 13, 14, 15, 16

-v-

# I.    INTRODUCTION

This action arises from the attempt by cross-complainant Shindig Hospitality Group ("Shindig") to open a bar and restaurant in Chicago, Illinois (the "Restaurant").  In November 2018, Shindig entered into a consulting and license agreement (the "Agreement") with Good Times Restaurant, LLC ("Good Times").  Under the terms of the Agreement, Good Times would provide consulting services to Shindig and license some of its intellectual property to Shindig for use at the Restaurant.  When Shindig failed to pay for both the consulting services performed by Good Times and the licensing fee for the intellectual property, Good Times was forced to bring this action.  Needless to say, Shindig cross-complained against Good Times and its managing member, Vikram Bhambri, alleging that the Agreement was in fact a franchise agreement under California and Illinois law.  Shindig so alleged notwithstanding that the Agreement states that the services to be provided under it are "instruction, information and guidance related generally to the operation of a restaurant . . . ."  Moreover, the Agreement fails to set forth any indicia that it is franchise agreement.  Shindig further contends that Good Times and Vikram Bhambri made false representations as to the terms of both the Agreement and Shindig's operating agreement that they are alleged to have drafted.  Shindig does so notwithstanding that each document was read and signed by Shindig's managing member, Manish Mallick, and each contain an integration clause that "supersede all prior and contemporaneous agreements, representations and understandings of the parties."  Additionally, Bhambri and Mallick are cousins.

This is the second attempt by Shindig to state a claim against Good Times and Vikram Bhambri.  The first attempt did not go well for Shindig.  The original counter-claim and third party complaint (the "Counterclaim") alleged injuries suffered not by Shindig but by Mallick who lacked standing to assert a claim for relief because he is not a party to this action.  Recognizing this fact, and conceding other defects in the Counterclaim, Shindig did not oppose Good Times' previous motion to dismiss.  Instead, Shindig filed a new pleading consisting of an amended answer, an amended cross-complaint and an amended third-party complaint that names four new third-party defendants (the "Amended Pleading").  In so doing, Shindig ignored Rule

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

15(a) of the Federal Rules of Civil Procedure and did not obtain either leave of court or a stipulation from all parties before filing its amended answer.  Nor did Shindig comply with Rules 15(b) and 21 of the Federal Rules of Civil Procedure which required it to obtain leave of court before naming the four members of Good Times as additional third party defendants.

As a consequence, the four newly added third-party defendants, Anupama Bhambri ("Anu Bhambri"), Taresh Anand ("Anand"), Jatinder Pal Singh Kohli ("Kohli") and Sachin Dhawan ("Dhawan") (collectively the "third-party defendants") move to dismiss the Tenth Claim for Relief for breach of fiduciary duty because they were not properly named as parties to this case.

Not only is the Amended Pleading procedurally defective, it is substantively deficient too.  The third party defendants therefore move to dismiss the Tenth Cause of Action because it does not set forth facts sufficient to constitute a claim for breach of fiduciary duty.

Similarly, Good Times and Bhambri move to dismiss five of the nine claims for relief asserted against them in the Amended Pleading.  They move dismiss the Second, Fifth and Sixth Claims for Relief because each claim is based on the misguided notion that the written "Consulting and Licensing Agreement" (the "Agreement") allegedly entered to by Good Times and Shindig in November 2018 constitutes a written franchise agreement that is subject to the California and Illinois franchise law and federal law and regulations.  The Agreement is attached to the Amended Pleading as Exhibit B and examination of the documents reveals that it is not a franchise agreement.  Indeed, the Agreement does not meet the definition of a franchise agreement under either California or Illinois law.  The Agreement contains no marketing plan.  Nor does it impose on Shindig a marketing system prescribed by Good Times.  Rather, the Agreement states that Good Times would provide strategic restaurant "consulting" and licenses to Shindig certain intellectual property of Good Times.  As such, the assertion that the Agreement constitute a franchise agreement is without merit.

Equally without merit is the attempt to hold Vikram Bhambri personally liable for the Second, Fifth and Sixth Claims for Relief under the theory that he failed to provide Shindig with

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

franchise disclosure information.  Mr. Bhambri had no duty to do so because the Agreement is not a franchise agreement under either California or Illinois law.  As such, Shindig has not stated a claim against Vikram Bhambri.

Good Times and Bhambri further move to dismiss the Fourth Claim for Relief for Unfair Trade Practices because it too is based on violations of state and federal franchise laws which do not apply to the Agreement.  Dismissal of the Fourth Claim for Relief is further warranted because the claim fails to allege enough facts to state a claim for relief that is plausible on its face.  Instead, Shindig asserts that the Agreement contains unspecified "unconscionable contract terms" rendering the Agreement in violation of California Business and Professions Code section 17200 which is known as the Unfair Competition Law (the "UCL").  Shindig, however, fails to identify the provisions of the Agreement that contain the "unconscionable contract terms" thereby failing to state a plausible claim for relief.

Good Times and Bhambri also move to dismiss the Seventh Claim for Relief for fraudulent misrepresentation which is based on the Agreement and on an operating agreement for Shindig (the "Operating Agreement").  Both documents are attached to the Amended Pleading and reveal that each contains an integration clause which makes clear that their terms supersede all prior and contemporaneous representations of Good Times, Shindig and their members.  The Agreement and Operating Agreement also makes clear that no amendments to them are binding unless set forth in a writing signed by Good Times, Shindig and their members.  Under such circumstances, Shindig could not have reasonably relied on any misrepresentations allegedly made by Vikram Bhambri—or anyone else — when it entered into the Agreement and Operating Agreement.  As such, Shindig has not stated facts upon which relief for fraudulent misrepresentation can be granted.

Finally, the Amended Pleading omits judicial admissions in the Counterclaim that are fatal to Shindig's claims for relief.  Shindig has also altered some of the allegations so that the injuries purportedly suffered by Mallick are now alleged to be on behalf of Shindig.  For example, while the Counterclaim alleged that Mallick personally funded the cost of obtaining a

-3-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

lease on real property used by Shindig to open its restaurant, the Amended Complaint contains no such allegation. While federal law may permit such tactics at the pleading stage, they are nonetheless suggestive of a sham pleading which, if supported by discovery in this case, gives Good Times and the third-party defendants the right to move for sanctions under Rule 11.

Accordingly, Good Times and each third-party defendant respectfully request that this motion be granted in its entirety.

## II. THE ALLEGATIONS AND CLAIMS FOR RELIEF ASSERTED AGAINST GOOD TIMES AND BHAMBRI

Mallick is alleged to be one of two managing members of Shindig. Amended Pleading ¶34 and Exhibit C at ¶1.23. The other manager of the company is alleged to be Anupama Bhambri, the wife of Bhambri. Amended Pleading, ¶34 and Exhibit C at ¶1.23. Mallick is further alleged to be the cousin of Bhambri. Amended Pleading, ¶20.

### A. The Agreement.

Shindig alleges that in 2018, Bhambri approached Mallick about opening a bar and restaurant in Illinois (the "Restaurant") and that Good Times would act as a "consultant" to "Mr. Mallick's operation" and teach Mallick how to operate a restaurant. Amended Pleading, ¶18. Ostensibly toward this goal, Vikram Bhambri is alleged to have presented the Agreement to Mallick in November 2018 and represented that it "reflected how Good Times would consult and advise Shindig on opening and operating a restaurant." Amended Pleading, ¶24. In the Counterclaim, Shindig asserted that Mallick "reviewed" the Agreement and "noticed" that it contained a management fee that had not been discussed with or agreed to by him but that he nonetheless signed the Agreement because of Bhambri's representation that the fee was for the salary of the chef for the restaurant and "not to worry about it" because it would be changed later. *See* Counterclaim, ¶¶20-21. These allegations have vanished and Shindig now contends that Bhamri represented that he structured the Agreement "so it would not be a franchise because he did not want it to be subject to the franchise compliance requirements." Amended Complaint, ¶25.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-4-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    The Agreement is attached to the Amended Pleading as Exhibit B.  In its preamble,

2  Shindig is identified as the "Company" and Good Times is identified as the "Consultant."  The

3  first paragraph to the Agreement sets forth the obligations of Good Times in its role as the

4  Consultant.  It states:

> *Consultant*, through its authorized representatives, officers, directors, employees and/or agents, shall provide the Company with instruction, information and guidance *related generally to the operation of a restaurant*, including with respect to such matters as implementing and maintaining operating procedures; supply and equipment purchasing strategies; employee hiring, retention, management and compensation, public relations and advertising; menu item selection and management, and food preparation; and other such matters as the parties may agree upon from time to time *and which fall generally into the category of strategic restaurant consulting.*

10  Counterclaim, Exhibit B at ¶1 (emphasis added).

11    The Agreement also sets forth how Good Times would be paid for the consulting services

12  provided to Shindig.  Paragraph 2, entitled "Management Fee; Expense Reimbursement" states,

13  in part:

> (a)   In consideration of Manager providing the services described herein, *the Company shall pay to Consultant a management fee* equal to three percent (3%) of the gross sales of the Company, payable in arrears on a monthly basis.
>
> (b)   The Company shall reimburse Consultant for all reasonably incurred, direct administrative, out-of-pocket expenses incurred by Consultant in performing its duties under this Agreement.  Such reimbursement shall be made no less frequently than on a quarterly basis.  Consultant shall submit written invoices to the Company.  Consultant shall, upon request, provide the Company with all appropriate backup documentation to support Consultant's reimbursement claim.  The Company shall pay all invoices for reimbursement with fifteen (15) days of receipt thereof.

20  *Id.*, Exhibit B at ¶2 (emphasis added).

21    The Agreement further provides for the licensing to Shindig of some of Good Times'

22  intellectual property.  Paragraph 5 of the Agreement, entitled "Intellectual Property License"

23  states:

> *Consultant hereby grants to the Company, a non-exclusive license (the "License")* to the tradename "ROOH:, the overall Rooh restaurant concept, distinguishing architectural features, kitchen, bar and dining room design compoents, the restaurant "look and feel", color schemes, menus, and recipes as developed, updated and modified by Consultant from time to time (collectively, the "**Intellectual Property**").

27  Counterclaim, Exhibit B at ¶5 (emphasis added).

28                                -5-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   Paragraph 5 of the Agreement further states where and how the Intellectual Property of

2   Good Times is to be used and the consideration for the license.  Paragraph 5 provides:

3   > The Company acknowledges that (i) the License allow [sic] the Company to use the
    > Intellectual Property only at the Property and at no other location or in connection with

4   > any other business activity; (ii) Consultant has the right to use or license the use of the
    > Intellectual Property to others, or make other use of the Intellectual Property itself, and

5   > the Company acknowledges that Consultant in fact does so use and/or license the
    > Intellectual Property at other locations; and (iii) neither the Company or any Member

6   > shall have any ownership interest in any component of the Intellectual Property or any
    > right to participate or own an interest in any other use of the Intellectual Property absent a

7   > separate, or other agreement granting such rights.  *As consideration for the License, the
    > Company shall pay Consultant a one time licensing fee of $75,000, payable in full upon*

8   > *mutual execution of this Agreement.*

9   *Id.* (emphasis added).

10  The Agreement is governed by California law (Amended Pleading, Exhibit B at ¶9(g)).

11  The document also contains an integration clause that states "[t]his Agreement constitutes the

12  entire agreement between the parties pertaining to the subject matter contained in it and

13  supersedes all prior and contemporaneous agreements, representations and understandings of the

14  parties.  Amended Pleading, Exhibit B at ¶9(j).  The Agreement further provides that "[n]o

15  amendment to this Agreement shall be valid or binding unless set forth in writing and duly

16  executed by each of the parties to this Agreement."  Amended Pleading, Exhibit B at ¶9(k).  The

17  Agreement is signed by Shindig by its two managing members, Anu Bhambri and Mallick and

18  by Good Times by its managing member, Vikram Bhambi.  Amended Pleading, Exhibit B at

19  page 3.

20

21  **B.    *The Shindig Operating Agreement.***

22  Under the heading "Formation of Shindig", the Amended Pleading alleges that Bhambri

23  presented Mallick with an operating agreement for Shindig (the "Operating Agreement").

24  Amended Pleading, ¶30.  In so doing, Bhambri is alleged to have "told Mr. Mallick that it was

25  standard to have such an agreement and 'not to worry about it.'"  *Id.*  Based on these

26  representations, Mallick is alleged to have signed the Operating Agreement as Shindig's

27  managing member and the Operating Agreement is allegedly attached to the Amended Pleading

28  -6-

as Exhibit C. Amended Pleading, ¶¶30, 31. Shindig further alleges that unbeknownst to Mallick, and without his consent, Bhambri appointed his wife, Anu Bhambri as a co-manager in the Operating Agreement. Amended Pleading, ¶34 and Exhibit C at ¶1.23 and at page 3. When Mallick questioned why his wife, Rina Mallick was not listed as a co-managing member in lieu of Anu Bhambri allegedly responded "don't worry we will update it later and that we just need to get this signed asap so that we can move forward with the lease." Amended Pleading, ¶34.

The Operating Agreement is governed by Illinois law (Amended Pleading, Exhibit C at ¶12.7) and contains an integration clause that states: "[t]his Agreement constitutes the entire agreement between the parties pertaining to the subject matter contained in it and supersedes all prior and contemporaneous agreements and representations and understandings of the parties." Amended Complaint, Exhibit C at ¶12.14 at 24. The parties to the Operating Agreement are each person executing it who are identified as "members." Amended Complaint, Exhibit C at preamble at page 1 and who are identified in the signature block at page 25 and again on Schedule 4.1 at page 26 as: Anu Bhambri, Manish Mallick, Sachin Dhawan, Taresh Anand and Jatinder Pal Singh Kohli.

C.    *The Restaurant.*

In the Amended Pleading, Shindig alleges that the Restaurant opened for business on May 23, 2019. Amended Pleading, ¶39. Originally, Shindig asserted that Mallick "paid [out of his own funds] all amounts needed to secure the Property" where Shindig opened the Restaurant. Counterclaim, ¶29. This allegation has been omitted from the Amended Pleading. See Amended Pleading ¶36; compare Counterclaim, ¶29.

Other judicial admissions of Shindig have also been altered in the Amended Pleading. For example, the Counterclaim alleged that Mallick invested $700,000.00 in the buildout and opening of the Restaurant. Counterclaim, ¶22. This allegation has been changed to allege that the investment was made by Shindig. Amended Pleading, ¶29. Similarly, although the Counterclaim alleged that Good Times "agreed to provide" Shindig with the use of executive chef and kitchen staff, (Counterclaim, ¶35) this allegation has been changed to allege that Good

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-7-

Times "required Shindig to use its executive chef and kitchen staff."  Amended Complaint, ¶42.
In so doing, the Amended Pleading does not state how Good Times "required" or otherwise
compelled Shindig—which is alleged to be a legal entity that is separate and distinct from Good
Times—to use the chef and kitchen staff of Good Times.  See Amended Complaint, ¶42.

Likewise, Shindig originally alleged in its Counterclaim that "Good Times engaged in
improper labor practices by sending their [sic] employees who were not legal to work at the
Restaurant and forcing Shindig to pay the employees with cash."  Counterclaim, ¶45.  Shindig
has changed this allegation to state that "[u]knbeknownst to Shindig at the time, Good Times
engaged in improper labor practices by forcing Shindig to use its' [sic] employees who were not
legal to work at the Restaurant and forcing Shindig to pay the employees in cash.  Amended
Pleading, ¶52.  The Amended Pleading, however, does not allege how Good Times compelled
Shindig to use allegedly undocumented workers at the Restaurant or how Shindig was compelled
to pay them without complying with wage and hour laws.

### III.    POINTS AND AUTHORITIES

*1.    The Standard Governing this Motion.*

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claim or claims
stated in a pleading.  *Strom v. United States*, 641 F.3d 1051, 1067, n. 17 (9th Cir. 2011).  For
purposes of Rule 12(b)(6), a "claim" means a set of facts that if established, entitle Shindig to
relief.  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).  Dismissal under a Rule
12(b)(6) motion is proper when the pleading fails to either allege a cognizable legal theory or
fails to allege sufficient facts to support a cognizable legal theory.  *Caltex Plastics, Inc. v.
Lockheed Martin Corporation*, 824 F.3d 1156, 1159 (9th Cir. 2016); *Seismic Reservoir 2020,
Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015) (dismissal can be based on a dispositive legal
issue).

A motion to dismiss cannot consider material outside of the pleading unless this Court
converts the motion into a motion for summary judgment.  *See Arpin v. Santa Clara Valley
Transportation Agency*, 261 F. 3d 912, 925 (9th Cir. 2001); *Butler v. Los Angeles County*, 617 F.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Memorandum of Counter-defendant Good Times, LLC                    Case No.  3:21-cv-07688 AGT
And Third Party Defendant Vikram Bhambri to Dismiss Counterclaim of Shindig Hospitality Group, LLC

Supp. 2d 994, 999 (CD Cal. 2008); *Paulsen v. CNF, Inc.*, 391 F. Supp. 2d 804, 807 (ND Cal. 2005). Moreover, material properly submitted with the pleading may be considered as part of the pleading for purposes of a Rule 12(b)(6) motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co*., Inc., 896 F.2d 1542, 1555, n. 19 (9th Cir. 1990); *Petrie v. Electronic Game Card, Inc.*, 761 F.3d 959, 964 n. 6, (9th Cir. 2014). As a consequence, the documents attached to a pleading and incorporated therein are treated as part of the pleading when ruling on a Rule 12(b)(6) motion. *See In re NVIDIA Corporation Securities Litigation*, 768 F.3d 1046, 1051 (9th Cir. 2014). The doctrine of incorporation by reference allows this Court to look beyond the pleadings without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Knievel v. ESPN*, 393 F.3d 1068, 1076-1077 (9th Cir. 2005).

Although a pleading need not contain detailed factual allegations, the pleading must allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 556-557, 570 (2007). The plausibility requirement governs the pleading of all claims, including complaints, counterclaims and third-party claims, in all federal civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). Subject to the plausibility requirement of *Twombly* and *Iqbal*, this Court must accept as true the factual allegations in the pleading and all reasonable inferences from the allegations are drawn in in the light most favorable to the pleader. *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).

    2.    *Shindig's Second, Fifth and Sixth Claims for Relief Fail to State Facts Upon Which Relief Can be Granted.*

        A.    *The Agreement is Not a Franchise Agreement*

Shindig's Second Claim for Relief is for violation of the California Franchise Investment Law, Cal. Corp. Code section 31000 *et seq*. (the "CFIL"). This claim is based on the Agreement which Shindig contends constitutes an offer and sale of a franchise under the CFIL. Amended Pleading, ¶66. In so alleging, Shindig accuses Vikram Bhambri of "making affirmative misrepresentations and omitt[ing] material facts in communications with Shindig and Mr. Mallick" in violation of the CFIL. Amended Pleading, ¶¶67, 68. Shindig further seeks to hold

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

**Gordon Rees Scully Mansukhani, LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

1  Bhambri individually liable under the CFIL by accusing him of "personally participating and

2  materially" aiding the violation of the CFIL in his role as "the principal executive officer,

3  director or" having similar status or function and control over Good Times in violation of section

4  31302 of the Corporations Code.  Amended Pleading, ¶70.

5      Shindig's contentions are without merit.  The Agreement does not meet the statutory

6  definition of a franchise and is therefore not subject to the CFIL.  A franchise is an oral or

7  written contract between two or more people by which:

8      (1)    a franchisee is granted the right to engage in the business of offering, selling or

9  distributing good or services under a marketing plan or system prescribed in substantial part by a

10  franchisor, and

11      (2)    The operation of the franchisee's business pursuant to such plan or system

12  is substantially associated with the franchisor's trademark, service mark, trade name,

13  logotype, advertising or other commercial symbol designating the franchisor or its

14  affiliate; and

15      (3)    The franchisee is required to pay, directly or indirectly, a franchise fee.

16      A franchise fee under both the CFIL and the California Franchise Relations Act (the

17  "CFRA") is a fee paid for the right to do business.  It is not ordinary business expenses paid

18  during the course of business.  *Thueson v. U-Haul International, Inc.*, 144 Cal. App. 4th 664, 676

19  (2006).  Indeed, for a business relationship to legally constitute a "franchise" a franchise fee of

20  more than $100.00 must have been paid for the franchise rights.  *Id*. at 673.

21      Nowhere does the Agreement set forth a "marketing plan" or "system" in any way

22  "prescribed" by Good Times.  Indeed, Shindig makes no such allegations in it is Amended

23  Pleading.  These facts alone warrant dismissal of the Second Claim for Relief because the

24  Agreement does not meet the first prong of the definition of a franchise.

25      The Agreement further makes clear that no fee is to be paid by Shindig for the right to do

26  business.  Instead, the management fee specified in the Agreement is for payment to Good Times

27  for the consulting services to be performed under the Agreement and "which fall generally into

28

-10-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   the category of strategic restaurant consulting." Amended Pleading, Exhibit B at ¶1. For this

2   service, Good Times was to be paid a management fee. *Id*., at ¶2. The second payment specified

3   in the Agreement is for the licensing of Good Times' intellectual property for which Shindig

4   would pay Good Times $75,000.00. *Id*. at ¶5. The licensing payment is not for the right of

5   Shindig to do business but rather is for Shindig's use of Good Times' intellectual property. As

6   such, the intellectual property fee is not a franchise fee as set forth in *Thueson v. U-Haul*

7   *International, Inc*., *supra*.

8          Moreover the terms and conditions of the Agreement make clear that it is not a franchise

9   agreement. The Agreement is a consulting agreement which is expressly stated in its terms.

10  Amended Pleading, Exhibit B at ¶¶C and 1 at page 1. As such, neither Good Times nor Bhambri

11  had a duty to provide Shindig with a disclosure agreement under the CFIL. The Second Claim

12  for Relief is therefore properly dismissed because it fails to state a claim upon which relief can

13  be granted.

14          **B.      *Shindig Has Failed to State a Claim for Wrongful Termination of
               the Agreement.***

15          The Fifth Claim for Relief asserts that Good Times wrongfully terminated the Agreement

16  in violation of the California Franchise Relations Act, Business and Professions Code section

17  20000 *et seq*. (the "CFRA") and California Business and Professions Code section 20020 by

18  providing Shindig with less than a sixty-day notice to cure. Amended Pleading, ¶85. This claim

19  for relief fails because the Agreement is not a franchise agreement and is therefore not subject to

20  either the CFRA or section 20020 of the Business and Professions Code.

21          The definition of franchise under the CFRA is virtually identical to the definition

22  used in the CFIL. *See* Business and Professions Code section 20001 defining "franchise"

23  under the CFRA as, *inter alia*, a contract "between two or more persons by which (a) a

24  franchisee is granted the right to engage in the business of offering, selling or distributing

25  goods or services under a marketing plan or system prescribed in substantial part by a

26  franchisor and . . . ." Similarly, section 20020 of the Business and Professions Code

27  proscribes termination of a franchise agreement without good cause and with at least 60

28                                              -11-

days' notice.  The Agreement, however, is not a franchise agreement for the reasons expressed in section 2A above and is therefore not subject to the CFRA or section 20020 of the California Business and Professions Code.  Good Times and Bhambri therefore respectfully request that the Sixth Claim for Relief be dismissed because it fails to state a claim upon which relief can be granted.

C.    *The Agreement is not Subject to the Illinois Franchise Disclosure Act.*

In its Sixth Claim for Relief, Shindig seeks to hold Good Times and Bhambri liable under the Illinois Franchise Disclosure Act, 815 ILCS 705 et seq.   The definition of a franchise under the Illinois Franchise Disclosure Act is virtually identical to that used in the CFIL and CFRA.

Specifically, section 3 of the Illinois Franchise Disclosure Act provides, *inter alia*, that:

(1) Franchise" means a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:

(a) a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services, *under a marketing plan or system prescribed or suggested in substantial part by a franchisor*; and

(b) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and

(c) the person granted the right to engage in such business *is required to pay to the franchisor or an affiliate of the franchisor, directly or indirectly, a franchise fee* of $500 or more;

815 ILCS 705/3 (emphasis added).

The Agreement is not subject to the Illinois Franchise Disclosure Act for the same reasons as set forth in sections 2A and 2B above.  As such, the Seventh Claim for Relief is properly dismissed because Shindig is unable to state facts upon which relief can be granted under the Illinois Franchise Disclosure Act.

3.    *The Amended Pleading Fails to State a Claim for Violation of the Unfair Competition Law.*

The Fourth Claim for Relief seeks to hold Good Times and Vikram Bhambri liable under the California Unfair Competition Law, Business and Profession Code section 17200 et seq. (the

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-12-

1    "UCL") based on the misguided theory that the Agreement is a franchise agreement and that

2    Good Times and Bhambri violated the Federal Trade Commission Franchise Disclosure Rule, 16

3    C.F.R. §436 et seq. (the "FTC Rule").   As set forth in sections 2 and 3 above, the Agreement is

4    not a franchise agreement under either California or Illinois law and as set forth below, it is not

5    subject to the FTC Rule.

6        The FTC Rule sets forth a three part test for determining whether a "franchise" exits.

7    The test consists of (i) the right of a franchisee to operate a business using a franchisor's

8    trademark or to distribute goods that are identified with the franchisor's trademark; (ii) the

9    authority of a franchisor to *exert a significant degree of control over the franchisee's method of*

10    *operation or provide significant assistance in the method of operation* and (iii) the need for a

11    franchisee to make a payment to the franchisor, or to commit to the making of such a payment, r

12    as a condition of obtaining or commencing operation of the franchise.  Specifically, 16 C.F.R.

13    §436.1(h) defines a "franchise" as:

14        (1)  The franchisee will obtain the right to operate a business that is identified or
15        associated with the franchisor's trademark, or to offer, sell, or distribute goods,
16        services, or commodities that are identified or associated with the franchisor's
        trademark;

17        (2)  The franchisor will exert or has authority to exert a significant degree of
18        control over the franchisee's method of operation, *or provide significant*
        *assistance in the franchisee's method of operation*; and

19
20        (3)  As a condition of obtaining or commencing operation of the franchise, the
        franchisee makes a required payment or commits to make a *required payment* to
21        the franchisor or its affiliate.

22    16 C.F.R. §436.1(h) (emphasis added).

23        A "required payment" is the consideration to be paid by a franchisee to a franchisor as a

24    condition of obtaining or commending operation of the franchise.  Specifically, 16 C.F.R.

25    §436.1(s) states:

26        Required payment means all consideration that the franchisee must pay to the franchisor
27        or an affiliate, either by contract or by practical necessity, *as a condition of obtaining or*
        *commencing operation of the franchise.*  A required payment does not include payments

28                                        -13-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

for the purchase of reasonable amounts of inventory at bona fide wholesale prices for resale or lease.

16 C.F.R. §436.1(s) (emphasis added).

A "franchisee" is "any person who is granted a franchise.  16 C.F.R. §436.1(i).

Finally, a "franchisor" is any person who grants a franchise and participates in the franchise relationship.  16 C.F. R. §436.1(k).

> A.    *The Management Fee Specified in the Agreement is Not a Required Payment.*

The Agreement does not satisfy the three part test for a franchise because the consideration to be paid for the consulting services of Good Times is not a "required payment" by Shindig to operate the Restaurant.  Indeed, nothing in the Agreement conditions the opening or operation of the Restaurant on a payment to Good Times by Shindig.

Shindig is required to pay a "management fee" for the consulting services performed by Good Times.  Amended Pleading, Exhibit B at ¶¶C, 1 and 2 at page 1.  This fee consists of 3% of Shindig's gross sales.  *Id.*, Exhibit B at ¶2(a).  Nowhere in the Agreement, however, is the ability of Shindig to open or operate the Restaurant conditioned on the management fee.

Rather, the management fee is the consideration for Good Time's "instruction, information and guidance" and "other matters" that Good Times and Shindig may agree upon and which "fall generally into the category of strategic restaurant consulting."  *Id.* at Exhibit B, ¶1.  As such, the Agreement does not require Shindig to accept, agree with or perform the advice provided by Good Times which Shindig is free to accept, reject or ignore.  The management fee specified in the Agreement is therefore not a "required payment" as set forth in 16 C.F.R. section §436.1(s) because it is not a condition of Shindig obtaining or commencing operation of the Restaurant.

That the management agreement was not a "required payment" is made clear in the Amended Pleading which contains no allegation that payment of the fee was a condition to obtaining or commencing operation of the Restaurant by Shindig.  Instead, Shindig asserts that the Agreement obligated Good Times to provide only "supervision, information, knowledge and

-14-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

guidance." *Id.* at ¶40. The alleged failure of Good Times to provide these services, however, did not prevent Shindig from opening the Restaurant in May 2019, approximately five months after it signed the Agreement with Good Times. Amended Pleading, ¶¶36-58. And that is because the management fee was never intended as a condition for Shindig to obtain and operate the Restaurant and Shindig cannot credibly allege otherwise.

Finally, in its First Amended Complaint, Good Times alleges that Shindig never paid the management fee to Good Times. First Amended Complaint, ¶¶16-17. In light of this allegation, Shindig cannot properly allege that it has made, or is committed to making, a required payment to Good Times. Indeed, the Amended Complaint contains no such allegation.

### B. The License Fee is Not a Required Payment.

The Agreement requires Shindig to pay $75,000.00 to Good Times for use of its intellectual property (the "License fee"). Amended Pleading, Exhibit B at ¶5. The License fee is for the use of Good Times' intellectual property and the fee is not paid to Good Times as condition of allowing Shindig to obtain or commence operation of the Restaurant. Rather, the License fee permits Shindig to use of Good Times' intellectual property at the Restaurant. Amended Pleading, Exhibit B at ¶5. As such the License fee too is not a "required payment" as defined by 16 C.F.R. §436.1(s).

None of the fees to paid to Good Times by Shindig, be it the management fee or the License fee, are required payments as defined by the Code of Federal Regulations. As such, Shindig cannot establish a material element to its contention that the Agreement is subject to the FTC Rule.

### C. The Agreement Neither Confers Good Times with Authority to Control the Operation of the Restaurant Nor does it Require Good Times to Provide Significant Assistance in the Operation of the Restaurant

Shindig is also unable to satisfy a second element of the FTC Rule. Specifically, the Agreement did not confer on Good Times the authority to exert a significant degree of control

-15-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

over Shindig's operation of the Restaurant.  Nor did the Agreement obligate Good Times to provide significant assistance in Shindig's method of operating the Restaurant.  As such, Shindig cannot satisfy the second element required by 16 C.F.R. §436.1(h).

The Agreement contains no provision conferring authority on Good Times to control how Shindig operates the Restaurant and the Amended Pleading contains no such allegation.  Nor does the Amended Pleading identify any other writing, contract or duty conferring authority on Good Times to control how Shindig operates the Restaurant.  As such, Shindig is unable to satisfy this aspect of 16 C.F.R. §436.1(h)(2).

Nor does the Agreement require Good Times to provide significant assistance in the operation of the Restaurant and the Amended Pleading does not so allege.  As noted above, Shindig itself alleges that the Agreement obligated Good Times to provide only "supervision, information, knowledge and guidance."  *Id*. at ¶40.  And as further noted above, the alleged failure of Good Times to provide these services did not prevent Shindig from opening the Restaurant in May 2019, approximately five months after it signed the Agreement with Good Times.  Amended Pleading, ¶¶36-58.  The Agreement, however, imposes no obligation on Good Times to provide significant assistance in the operation of the Restaurant.  Rather, it makes clear that Good Times was a consultant that would provide "instruction, information and guidance" on the operation of the Restaurant, advice that Shindig could accept or ignore.

> D.    *Shindig's Allegations of Control by Good Times are a Sham*

The Amended Pleading contains material changes to allegations originally pled in the Counterclaim.  These changes appear intended to show that Good Times controlled how Shindig operated the Restaurant.  For example, Shindig originally alleged that Good Times "agreed to provide" Shindig with the use of executive chef and kitchen staff.  Counterclaim, ¶35.  Shindig now alleges that Good Times "*required Shindig* to use its executive chef and kitchen staff."  Amended Complaint, ¶42 (emphasis added).  Nowhere in the Amended Pleading does Shindig allege the source of the duty requiring it to use Good Times executive chef and kitchen staff.  Indeed, the Agreement imposes no such duty.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-16-

Similarly, the Counterclaim alleged that "Good Times engaged in improper labor practices by sending their [sic] employees who were not legal to work at the Restaurant and forcing Shindig to pay the employees with cash."  Counterclaim, ¶45.  Shindig has changed this allegation to state that "[u]knbeknownst to Shindig at the time, Good Times engaged in improper labor practices *by forcing* Shindig to use its' [sic] employees who were not legal to work at the Restaurant and forcing Shindig to pay the employees in cash.  Amended Pleading, ¶52 (emphasis added).  The Amended Pleading, however, does not allege how Good Times compelled Shindig to use allegedly undocumented workers at the Restaurant or how Shindig was compelled to pay them without complying with wage and hour laws and the Agreement imposes no such duty.

Shindig's allegations are therefore without merit because it is failed to identify the source of the duty requiring it to engage in the alleged conduct.  Moreover, these allegations appear intended to manufacturer a claim that Good Times exercised control over the Restaurant.  In the absence of an identifiable duty by Shindig to comply with the alleged demands of Good Times, the allegations are nothing more than a sham.

### E.    *Shindig Identifies No Terms of the Agreement that are Unconscionable.*

The contention that the actions of Good Times and Vikram Bhambri violated the UCL because of unconscionable terms in the Agreement is nonsense.  The Amended Pleading does not identify the terms in the Agreement that Shindig contends are unconscionable.  Nor does Shindig allege why the non-identified terms are unconscionable.  As such, the Amended Pleading fails to allege enough facts to state a claim for relief that is plausible on its face in violation of *Twombly* and *Iqbal*, *supra*.  The Fifth Cause of Action is therefore properly dismissed pursuant to Rule 12(b)(6).  Accordingly, Shindig's Fourth Cause of Action for violation of the California Unfair Competition Law is properly dismissed for failure to state a claim upon which relief can be granted.

### 4.    *The Seventh Claim for Relief Fraudulent Misrepresentation Fails to State a Claim Upon Which Relief Can be Granted.*

Memorandum of Counter-defendant Good Times, LLC                    Case No.  3:21-cv-07688 AGT
And Third Party Defendant Vikram Bhambri to Dismiss Counterclaim of Shindig Hospitality Group, LLC

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   Shindig's claim for fraudulent misrepresentation is without merit.  To state a claim for

2   fraudulent misrepresentation, Shindig must allege show that its reliance on the representations

3   allegedly made by Vikram Bhambri was reasonable.  *Hoffman v. 162 Wolfe LLC*, 228 Cal. App.

4   4th 1178, 1194 (2014).  Shindig cannot do so.

5   As alleged in the Counterclaim, Shindig's managing member, Mallick, read and

6   understood the terms of the Agreement and even asked questions about the Agreement and

7   Operating Agreement.  Counterclaim, ¶20, 27.  These allegations, however, have conveniently

8   been omitted from the Amended Pleading.

9   What cannot be rewritten, however, are the terms of the Agreement and Operating

10  Agreement both of which were signed by Mallick on behalf of Shindig purportedly based on

11  Bhambri's representations that the terms "would be changed later" and not to "worry about it."

12  The Agreement and Operating Agreement, however, contain integration clauses which makes

13  clear that both agreements supersede all prior and contemporaneous representations made by

14  Good Times and Shindig and those acting on their behalf.  The agreements also make clear that

15  no amendments to them are binding unless set forth in a writing signed by the parties to the

16  agreements.  Under these circumstances, Shindig could not have reasonably relied on the prior

17  and contemporaneous misrepresentations allegedly made by Bhambri.  Moreover, the Amended

18  Pleading alleges no subsequent misrepresentations of Vikrahm Bhambri or anyone else.  As

19  such, Shindig has not stated facts upon which relief for intentional misrepresentation can be

20  granted.  Good Times therefore respectfully requests that this motion to dismiss be granted in its

21  entirety.

22  **5.    *The Tenth Cause of Action Fails to State a Claim for Breach of Fiduciary
        Duty.***

23  The allegations of breach of fiduciary duty asserted against third-party defendants

24  Anu Bhambri, Tarewsh Anand, Jatinder Pal Singh Kohli and Sachin Dhawan (the "third-

25  party defendants") fail to state a claim upon which relief can be granted.  The Amended

26  Pleading alleges that these third party defendants breached their fiduciary duty against

27  Shindig because they authorized Good Times to bring this action against Shindig.  In so

28

-18-

doing, the Amended Pleading fails to disclose that resort to the courts is subject to the California litigation privilege and is not a proper basis for a tort that is based on a privilege.  *See* Cal. Civ. Code 47(b) (a privileged publication or broadcast is one made in any judicial proceeding); *Rosenthal v. Irell & Manella*, 135 Cal. App. 3d 121, 125-26 (1982) (The litigation privilege of Civil Code section 47 "attaches to any publication that has any reasonable relation to the action and is made to achieve the objections of the litigation" regardless of the theory of tort liability).  As the California Supreme Court has made clear: "[w]e contemplate no communication that is more clearly protected by the litigation privilege than the filing of a legal action."  *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1249 (2007).

Here, the third-party defendants are accused of authorizing Good Times to file suit against Shindig.  The act of filing a lawsuit is privileged and therefore is not a proper basis for Shindig's claim for breach of fiduciary duty.  Similarly, Shindig's assertion that the third-party defendants knew that the Agreement was invalid and that the Good Times' claims in this action are without merit also implicate the litigation privilege which is intended to permit access to the courts to make the determinations which Shindig asserts as fact.

The remaining accusations of Shindig also fail to support is claim of breach of fiduciary duty.  Shindig asserts that the third-party defendants "put the interests of Good Times before those of Shindig."  This assertion, however, is conclusory because the Amended Pleading fails to state the conduct undertaken by each Third Party defendant to put the interests of Good Times above those of Shindig.  None of the Third-Party defendants are accused of drafting the Agreement nor can Shindig reasonable so allege because Bhambri is alleged to have "structured" the document to avoid it being subject to franchise compliance requirements.  Amended Pleading, ¶¶24, 25.  Indeed, none of the third-party defendants are parties to the Agreement nor did they sign it.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-19-

Similarly, the allegation that the Agreement was signed by Shindig under "duress" and that it was made "to the detriment of Shindig" are conclusory accusations that lack any supporting allegations. See Amended Pleading, ¶116. The Agreement was signed by the managing member of Shindig who in the Counterclaim was alleged to have reviewed the document before signing it. As such, there is no credible basis for Shindig to allege that it signed the Agreement under "duress." Moreover, the Amended Pleading fails to identify the terms of the Agreement that are allegedly detrimental to Shindig. As such, Shindig has failed to allege facts showing a claim upon which relief can be granted. The third-party defendants therefore respectfully request that this Court dismiss the Tenth Cause of Action for breach of fiduciary duty.

Finally, the allegations of breach of fiduciary duty are properly dismissed against each of the third-party defendants because Shindig never obtained leave of court to permit it to file this claim against these parties as required by Rules 15 and 21 of the Federal Rules of Civil Procedure. As such, the Tenth Claim for Relief is procedurally defective.

## IV.    CONCLUSION

Good Times, Bhambri and the third-party defendants move to dismiss claims for relief that are without merit. The Agreement is not subject to the franchise laws of California or Illinois or the FTC Rule. As such, the Second, Fifth and Sixth Claims for Relief are properly dismissed under Rule 12(b)(6). Similarly, the Fourth Claim for Relief under the UCL is improper because it is based on purported violations of franchise law and unspecified allegations of unconscionable terms which fail to satisfy *Twombly* and *Iqbal*. Additionally, the Seventh Claim for Relief for fraudulent misrepresentation is without merit because Shindig's reliance on the alleged representations of Bhambri are untenable given the integration clause contained in both the Agreement and Operating Agreement. Finally, the Tenth Claim for Relief for breach of fiduciary duty is without merit. The filing of a civil action is subject to the California litigation privilege and cannot be used as the basis for a claim of breach of fiduciary duty. Shindig's remaining allegations in support of its claim for breach of fiduciary duty are conclusory and fail

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  to state a claim upon which relief can be based.  Accordingly, Good Times, Bhambri and the

2  third-party defendants respectfully request that their motion to dismiss be granted in its entirety.

3

4

Dated: May 13, 2022                    GORDON REES SCULLY MANSUKHANI, LLP

5

6                                        By: _____

7                                           David L. Jordan
                                            Edward Romero
8                                        Attorneys for PLAINTIFF AND COUNTER-
                                         DEFENDANT GOOD TIMES RESTAURANTS,
9                                        LLC and THIRD PARTY DEFENDANTS
                                         VIKRAM BHAMBRI, _ANUPAMA BHAMBRI,
10                                       TARESH ANAND,JATINDER PAL SINGH
                                         KOHLI, AND SACHIN DHAWANWILL

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Gordon Rees Scully Mansukhani, LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

-21-

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2022, I electronically filed the foregoing with the Clerk's Office using the CM/ECF System which will send notification of such filing to all counsel of record.

/s/ Edward Romero
EDWARD ROMERO

Memorandum of Counter-defendant Good Times, LLC                Case No.  3:21-cv-07688 AGT
And Third Party Defendant Vikram Bhambri to Dismiss Counterclaim of Shindig Hospitality Group, LLC

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1248979/67219932v.1