UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOD TIMES RESTAURANTS, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>SHINDIG HOSPITALITY GROUP, LLC,<br><br>        Defendant. | Case No. 21-cv-07688-AGT<br><br>**ORDER ON MOTIONS TO DISMISS AND TO STRIKE**<br><br>Re: Dkt. Nos. 60, 61 |

Good Times Restaurants, LLC, and the third-party defendants have moved to dismiss some of Shindig Hospitality Group's counterclaims and third-party claims and to strike one of Shindig's requests for relief. Both motions will be denied.

### I. MOTION TO DISMISS

The Court takes the well-pleaded factual allegations in the complaint as true, construes them in the light most favorable to the nonmoving party, and evaluates whether they state a plausible claim for relief. *See Fort v. Washington*, 41 F.4th 1141, 1144 (9th Cir. 2022). The Court treats the written instruments attached to the complaint, *see* dkts. 59-1, 59-2, 59-3, as "part of the pleading." Fed. R. Civ. P. 10(c).

#### A.    Claim Under California's Franchise Investment Law

Good Times and third-party defendant Vikram Bhambri first move to dismiss Shindig's claim under California's Franchise Investment Law (CFIL), Cal. Corp. Code §§ 31000–31516. They argue that the CFIL doesn't apply, because the key contract between Good Times and Shindig, which Bhambri signed on behalf of Good Times,

didn't plausibly establish a franchise. The Court concludes otherwise.

Under the CFIL, a "franchise" is an agreement that –

1. associates the franchisee's business "with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol;"
2. grants the franchisee "the right to engage in the business of offering, selling or distributing goods or services;"
3. requires the franchisee "to pay, directly or indirectly, a franchise fee;" and
4. "prescribe[s] in substantial part" a "marketing plan or system."

Cal. Corp. Code § 31005(a).

The parties' agreement plausibly satisfied all four elements.

*First*, the agreement associated Shindig's business with Good Times's "Rooh" tradename, providing Shindig with "a non-exclusive license" to use it. Dkt. 59-2 ¶ 5.

*Second*, the agreement granted Shindig the right to engage in the business of offering and selling goods and services. It allowed Shindig to open and operate a Rooh-branded restaurant in Chicago, utilizing "the overall Rooh restaurant concept." *Id.*

*Third*, the agreement required Shindig to pay a franchise fee. A franchise fee is "any fee or charge that a franchisee . . . is required to pay or agrees to pay for the right to enter into a business under a franchise agreement . . . ." Cal. Corp. Code § 31011. Here, at a minimum, a $75,000 licensing fee, which Shindig agreed to pay for the right to use the "Rooh" tradename and the "overall Rooh restaurant concept" (dkt. 59-2 ¶ 5), could plausibly be construed as a franchise fee.

*Fourth*, the agreement plausibly prescribed a marketing plan. Good Times gave Shindig the right to operate a restaurant that looked a particular way (Rooh's "distinguishing architectural features," "color schemes," and "menus"), offered particular food (Rooh's "recipes as developed, updated and modified" by Good Times), and appeared in a specific place (736 West Randolph Street, Chicago, Illinois). Dkt. 59-2 ¶¶ B, 5. The agreement also required Good Times to provide Shindig "with instruction,

information and guidance" on, among other things, "implementing and maintaining operating procedures," "public relations and advertising," "menu item selection and management," and "food preparation." *Id.* ¶ 1.

\* \* \*

Good Times and Bhambri, referred to for the remainder of this order jointly as Good Times, put forward five principal arguments for why the parties' agreement didn't establish a franchise. None of these arguments persuades at the pleading stage.

*Argument 1*. Good Times asserts that the $75,000 licensing fee wasn't for "the right to enter into a business," Cal. Corp. Code § 31011; it was for the right to use Good Times's intellectual property. The second of these points is true. The licensing fee did grant Shindig the right to use Good Times's intellectual property (Good Times's tradename and "the overall Rooh restaurant concept"). Dkt. 59-2 ¶ 5. But contrary to Good Times's suggestion, the first point is also true—the fee gave Shindig the right to enter into a business. If Shindig hadn't licensed Good Times's intellectual property, Shindig couldn't have operated a Rooh-branded restaurant.

*Argument 2*. Building on argument 1, Good Times asserts that the agreement as a whole, and the franchise fee within it, didn't grant Shindig "the right to enter into a business," Cal. Corp. Code § 31011, because even without the agreement, Shindig could have opened a restaurant. *See* Reply, Dkt. 65 at 7 ("[T]he scope of the [agreement] in no way affects the ability of Shindig to enter the restaurant business . . . ."). The fact that Shindig could have opened some sort of restaurant even without the agreement is immaterial. A restaurant franchise gives the franchisee the right to open a *particular* type of restaurant: a restaurant associated with the franchisor's "commercial symbol." Cal. Corp. Code § 31005(a)(2). That is what plausibly happened here. Good Times gave Shindig permission to open a particular type of restaurant, a Rooh restaurant. Without the agreement, Shindig couldn't have "engage[d] in [this] business." *Id.* § 31005(a)(1).

*Argument 3*. Attacking the fee element from a different angle, Good Times maintains that the licensing fee wasn't a "franchise fee" because Shindig never paid it. Whether Shindig paid the fee is a factual question; it can't be resolved now. But even if Shindig didn't pay the fee, that might not matter. The CFIL defines a franchise fee as "any fee or charge that a franchisee . . . is required to pay or agrees to pay for the right to enter into a business under a franchise agreement . . . ." Cal. Corp. Code § 31011. The focus is on whether the fee was "required," not on whether the fee was paid. The licensing fee was required. The parties agreed that Shindig "shall pay to [Good Times] a one time licensing fee of $75,000, payable in full upon mutual execution of this Agreement." Dkt. 59-2 ¶ 5. Whether Shindig paid the fee may bear on other issues in the case but might not affect whether the parties created a franchise.

*Argument 4*. Good Times argues that the agreement didn't "prescribe[]" a marketing plan, Cal. Corp. Code § 31005(a)(1), but only gave Shindig the option to operate a Rooh restaurant. The agreement, it is true, didn't "prescribe" a marketing plan in one sense of the word. It didn't dictate the plan's use. *See* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/prescribe (last visited Nov. 10, 2022) (defining "prescribe" as "1: to lay down a rule: dictate"). But under the CFIL, "[a] marketing plan or system may be 'prescribed' . . . . although there may be no obligation on the part of the franchisee to observe it, where a specific sales program is outlined, suggested, recommended, or otherwise originated by the franchisor." Comm'r of Business Oversight's Release 3-F at 2 (June 22, 1994).[1] Such a sales program was outlined and suggested here: use the Rooh name and menu and design the restaurant to look like other Rooh restaurants.

Other allegations bolster the Court's conclusion that the parties' agreement plausibly prescribed a marketing plan. As alleged, the CEO of Good Times, Anupama

---

[1] Release 3-F constitutes "prima facie evidence of the scope and extent of coverage of the definition of 'franchise' under [the CFIL]." Cal. Bus. & Prof. Code § 20009.

4

Bhambri, was also one of two managing members of Shindig and effectively had veto power over Shindig's business decisions. *See* Dkt. 59-3, Operating Agreement of Shindig Hospitality Group LLC ¶¶ 1.23, 7.1 (reflecting that management decisions had to be made "unanimously" by Shindig's two managing members, one of whom was Anupama Bhambri); *see also* Dkt. 59-1, Statement of Information for Good Times Restaurants LLC (Apr. 4, 2019) (identifying Anupama Bhambri as Good Times's CEO). Through its CEO, then, Good Times could control Shindig's business decisions. "[T]he ability of the franchisor to control the essential decision making process of a franchisee's business" is "indicative of a marketing plan or system prescribed by the franchisor." Comm'r Release 3-F at 2.

*Argument 5*. Lastly, Good Times asserts that the agreement didn't establish a franchise because it was titled a "Consulting and License Agreement," not a franchise agreement. Dkt. 59-2 at 2. The agreement's title is immaterial; the title isn't an element of the "franchise" definition. *See* Cal. Corp. Code § 31005. If it were, franchisors could avoid the CFIL's requirements simply by labeling their agreement in a particular way. They can't do so. *See People v. Kline*, 110 Cal. App. 3d 587, 594 (1980) (interpreting the CFIL; "[b]y phrasing his handwritten agreement in terms of sale of a 'business opportunity' appellant cannot avoid the requirement of registering this franchise sale") (footnote omitted).

The parties' agreement plausibly established a franchise under the CFIL. Good Times's motion to dismiss Shindig's CFIL claim is denied.

**B.     Claims Under Other Franchise Laws**

Shindig also brings claims against Good Times under California's Franchise Relations Act, Cal. Bus. & Prof. Code §§ 20000–20043; under Illinois's Franchise Disclosure Act, 815 ILCS 705/1 to 705/44; and under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, with the last of these claims based on allegations that Good Times violated the Federal Trade Commission's Franchise Rule, 16 C.F.R.

§§ 436.1 to 436.11.

Good Times has moved to dismiss these other franchise claims, but the company hasn't identified any reason why these claims should fare differently than the CFIL claim. The franchise-related claims all utilize similar definitions of what constitutes a "franchise." *See* Cal. Corp. Code § 31005(a); Cal. Bus. & Prof. Code § 20001; 815 ILCS 705/3; 16 C.F.R. § 436.1(h). For the same reasons discussed above, the motion to dismiss the other franchise claims is denied.

C. **Fraudulent Misrepresentation Claim**

Alleging fraud, Shindig says Good Times, through Vikram Bhambri, said it had "significant experience in the restaurant industry and would provide instruction," but "did not have the requisite experience" and "did not offer any consultation or guidance on how to design or structure [a restaurant] for successful service and operations." Dkt. 59 ¶¶ 38, 97–98.

Moving to dismiss the fraud claim, Good Times argues that Shindig didn't reasonably rely on the alleged representations. In support, Good Times points to an integration clause in the parties' agreement, which states that the agreement "constitutes the entire agreement between the parties . . . and supersedes all prior and contemporaneous agreements, representations and understanding of the parties." Dkt. 59-2 ¶ 9(j). Shindig agreed to this clause, so Good Times argues that Shindig couldn't reasonably rely on representations preceding the agreement.

Good Times overestimates the force of the integration clause. If Good Times induced Shindig to enter into the agreement by fraud, "the entire contract [is] voidable, including any provision in the contract providing the written contract is, for example, the sole agreement of the parties." *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 301 (2005). Also, this isn't the "rare case" where there's no question that plaintiff's reliance was unreasonable. *Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th 1226, 1239 (1995). The reasonableness of Shindig's reliance is an issue of fact and won't be

resolved at the pleading stage. The motion to dismiss Shindig's fraud claim is denied.

**D.      Breach of Fiduciary Duty Claim**

Shindig alleges that four third-party defendants, referred to here as the "fiduciary defendants," breached their fiduciary duties to Shindig. The fiduciary defendants have moved to dismiss this claim, which is the last claim challenged in the motion.

Shindig alleges that all four fiduciary defendants were members of *both* Good Times and Shindig, *see* dkt. 59-1 at 2–3; dkt. 59-3 at 26, and "agree[d] to the insertion of disputed terms in Good Times' favor into the Agreement," dkt. 59 ¶ 116. Taking these allegations as true, they plausibly plead a breach of the duty of loyalty. *See* 805 ILCS 180/15-3(b) ("A member's duty of loyalty to a member-managed company and its other members includes . . . (2) to act fairly when a member deals with the company . . . on behalf of a party having an interest adverse to the company").[2]

The fiduciary defendants argue that the allegations of their involvement are too conclusory, but the Court disagrees. Shindig has done more than "offer[] labels and conclusions or a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (simplified). Shindig has alleged facts: that the fiduciary defendants were members of both Good Times and Shindig and favored Good Times in contract negotiations with Shindig.

The fiduciary defendants attack other allegations on a different ground, asserting that one alleged action by them, the act of "authorizing Good Times to commence the instant [lawsuit]," dkt. 59 ¶ 116, is protected by California's litigation privilege. Even if that argument has merit, it doesn't extend to the allegations discussed in the two preceding paragraphs. Putting aside the allegedly privileged allegations, Shindig has still stated a plausible claim for relief.

The motion to dismiss Shindig's breach of fiduciary duty claim is denied.

---

[2] Shindig is an Illinois limited liability company, *see* dkt. 59-3 at 2, so the Court applies Illinois's Limited Liability Company Act, 805 ILCS 180/1-1 to 180/60-1.

## II.   MOTION TO STRIKE

The Court now turns to the second motion, the motion to strike. Good Times and the third-party defendants ask the Court to strike from Shindig's complaint a request for attorneys' fees under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. Even if Shindig prevails on its UCL claim, the movants assert that Shindig can't recover attorneys' fees under the UCL.

Only "an insufficient defense," or "redundant, immaterial, impertinent, or scandalous matter" can be stricken from the complaint. Fed. R. Civ. P. 12(f). A legally baseless prayer for attorneys' fees doesn't fit within any of those categories. *Cf. Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (holding that "Rule 12(f) does not authorize district courts to strike claims for [consequential] damages" because such claims similarly don't fit within any of Rule 12(f)'s categories). Because the Court cannot strike the prayer for relief under Rule 12(f), it denies the motion.

## III.   CONCLUSION

The motions to dismiss and to strike are both denied. The movants must answer Shindig's complaint by November 29, 2022.

**IT IS SO ORDERED.**

Dated: November 10, 2022

Alex G. Tse
United States Magistrate Judge